UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| SHAYLA C. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18CV489HEA |
| | ) | |
| | ) | |
| ANDREW M. SAUL | ) | |
| Commissioner of Social Security , | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court, pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), authorizing judicial review of the final decision of the Commissioner of Social Security denying Plaintiff's Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI") under 42 U.S.C. §§ 401-434, 1381-1385. For the reasons discussed below, the Commissioner's decision is affirmed.

Plaintiff originally filed a claim for benefits under Title II and Title XVI on November 18, 2014. After the claim was denied Plaintiff filed a request for a hearing which was held. The Administrative Law Judge issued an unfavorable decision. Plaintiff requested review by the Appeals Council, which request was denied on January 24, 2018.

On October 17, 2016 a hearing was conducted by ALJ Bradley Hanan in Creve Coeur, Missouri. Plaintiff appeared in person and with counsel. Also in appearance was Dr. Taylor, a Vocational Expert.

Plaintiff was born on August 20, 1992. She was 24 on the date of the hearing. She alleged she became disabled beginning March 1, 2014. Plaintiff asserted she was disabled due to bipolar disorder, depression, anger, and inability to concentrate. Plaintiff has an eleventh grade education and was not successful in securing her GED, although she attempted training and preparation for it a number of times. There is testimony that Plaintiff lives with her cousin as she cannot afford an apartment.

There was testimony from Plaintiff that she feels whenever she is around people they are always talking about her. Whether it's family members, co-workers, or strangers, is of no consequence. If in a public setting she feels people are out to get her.

In January/February she visited a clinic at Myrtle Hilliard Davis and she was prescribed Wellbutrin, Risperdal, and Vistaril. She testified she never filled the prescriptions because they were too costly and she did not have the funds to buy them outright.

Plaintiff testified that she cannot keep and doesn't have any friends because they all talk about her and talk down to her. She doesn't spend time with family members for the same reason.

Next, the Vocational Expert, Dr. Taylor, testified.  Taylor testified as to a proper hypothetical which assumed the past work of Plaintiff with specific limitations of: no exertional, postural, manipulative, environmental, or visual limitations. However, there are limitations to occupations that involve only simple, routine, repetitive tasks and occupations that do not require any written communications, and to be in a low-stress job, defined as jobs of only occasional decision-making required, of only occasional changes in the work setting occur, with no contact with the public, no interaction with coworkers, but contact with coworkers can still occur as long as that contact is casual and infrequent.  The work should also be isolated , defined as work where there is contact with supervisory staff concerning work duties when the work duties are being performed up to expectations still occurs no more than four times per work day. In these regards, Dr. Taylor noted there were 287,000 medium skilled dishwasher positions; 380, 000 medium, unskilled cleaner positions nationally.

The ALJ added an additional limitation that the individual could have no contact with other coworkers. Dr. Taylor then noted that all jobs involve at least superficial contact with coworkers. As a consequence the additional limitation

obviated any jobs being available. These conclusions and opinions by Dr. Taylor were noted in the record as consistent with the DOT.

Accordingly, the ALJ held, on April 19, 2017, that Plaintiff was not under any disability since the date the application was filed. The ALJ found that Plaintiff had severe impairments which included attention-deficit hyperactivity disorder (ADHD) and intellectual disability.  The ALJ found that she did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels with non-exertional limitations. Plaintiff was limited to occupations that involve simple, routine, and repetitive tasks. In a low-stress job defined as requiring only occasional decision making and only occasional changes in the work setting with no contact with the public, only casual and infrequent contact with coworkers, and contact with supervisors concerning work duties (when they are being performed satisfactorily) occurring no more than four times per workday. Consequently, the ALJ found that Plaintiff was not disabled.

On January 24, 2018, the Social Security Appeals Council denied Plaintiff's request for review. Plaintiff has exhausted her administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner subject to judicial review.

## Statement of the Issues

Generally the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are whether there is substantial evidence in support of the ALJ analysis of Plaintiff's severe impairments and whether substantial evidence supports the ALJ's analysis of the medical opinion.

As explained below, the Court has considered the entire record in this matter. The decision of the Commissioner is supported by substantial evidence and it will be affirmed.

## Standard for Determining Disability

The standard of review here is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). Substantial evidence is less than preponderance, but enough that a reasonable mind might accept as adequate to support the Commissioner's conclusion. *See id.*

The Court must consider evidence that both supports and detracts from the Commissioner's decision but cannot reverse the decision because substantial evidence also exists in the record that would have supported a contrary outcome, or because it would have decided the case differently. *See Andrews v. Colvin*, 791

F.3d 923, 928 (8th Cir. 2015). If the Court finds that the evidence supports two inconsistent positions and one of those positions represents the Commissioner's findings, the Court must affirm the Commissioner's decision. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The Eighth Circuit has stated that "[w]e defer heavily to the findings and conclusions of the Social Security Administration." *Id.* (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); see also *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step

process).  At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611.  At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); *McCoy*, 648 F.3d at 611.  At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e).  At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past

relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); *McCoy*, 648 F.3d at 611.  If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step.  *Id*.  At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations.  *See* 20 C.F.R. § 404.1545.  An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.  An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the

claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them.  The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the evidence presented relating to subjective complaints, including the claimant's prior work record and observations by third parties and treating and examining physicians relating to such matters as:

(1) The claimant's daily activities;

(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) Any precipitating or aggravating factors;

(4) The dosage, effectiveness, and side effects of any medication; and

(5) The claimant's functional restrictions.

Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir.2001) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir.2001)). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. See *Lauer*, 245 F.3d at 704

(some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F .3d 687, 697 (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir.2006).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." *Id.* The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988). The burden of persuasion to prove disability and demonstrate RFC remains on the claimant. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting,

pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

If the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

If the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in

terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

If the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir.

2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related

activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). The Commissioner makes this determination by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. § 416.920a(c)(3).

## Decision of the ALJ

In a decision dated April 19, 2017, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  The ALJ acknowledged that the administrative framework required a five-step, sequential process in evaluating Plaintiff's claim. At step one the ALJ concluded that Plaintiff had not engaged in any substantial gainful activity since March 1, 2014, the date of onset.  At step two, the ALJ found Plaintiff had the following severe impairments: attention-deficit hyperactivity disorder (ADHD) and intellectual disability.  At step three the ALJ found that she did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. The ALJ determined that Plaintiff retained the RFC to perform a full range of work

at all exertional levels but with nonexertional limitations including she is limited to occupations that involve only simple, routine, and repetitive tasks. In a low stress job defined as requiring only  occasional decision making and only occasional changes in the work setting with no contact with the public, only casual and infrequent contact with co-workers, and contact with supervisors concerning work duties (when work duties are being performed satisfactorily) occurring no more than four times per workday.

At step four the ALJ found there were jobs available for Plaintiff in the national economy considering her age, education, work experience, and residual functional capacity. At step five the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act since March 1, 2014.

## A. Was There Substantial Evidence in Support of The ALJ Residual Functional Capacity Determination?

Plaintiff asserts that the ALJ did not make it clear why the ADHD and intellectual disability were severe impairments. Thus, Plaintiff suggests that there is not substantial evidence supportive of the ALJ decision relating to the RFC finding. She has noted that the ALJ failed to weigh or assess the Dr. Gonzalez diagnostic impression.

Dr. Gonzalez had observed Plaintiff had a depressed mood but was coherent with no thought and or perceptual disorder.  The doctor observed she was not memory impaired, but she was easily distracted.  Dr. Gonzalez assessed Plaintiff

with hypertension, insomnia related to mental disorder, social phobia, and depressive disorder (Tr. 299).

The record, contrary to the argument put forth by Plaintiff, shows the ALJ referenced the Gonzalez examination and diagnoses (Tr. 299). It was noted by the ALJ that Dr. Gonzalez performed a psychiatric evaluation of Plaintiff and that Plaintiff was assessed with social phobia and depressive disorder (Tr. 25). The record also reflects, as noted by Defendant, that Dr. Carver opined that Plaintiff's allegations of ADHD, bipolar disorder, poor comprehension, and social paranoia were not supported by the record (Tr. 448). A clear and careful review of the RFC demonstrates inclusion of significant limitations on the ability of Plaintiff to work around others.

The ALJ stated that Plaintiff's "conditions produce limitations that meet this definition of 'severe,' as will be clear from the discussion of [Plaintiff's] residual functional capacity later in this decision" (Tr. 18). Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard. *See Kirby v. Astrue*, 500 F.3d 705, (8th Cir. 2007). In the discussion of the severity of Plaintiff's conditions the ALJ found that those conditions caused more than a minimal impact on Plaintiff's ability to perform work-related activities (Tr. 17-18).

As to the conflicting medical opinion issue Plaintiff did not secure regular, continuing treatment for mental impairments, but the ALJ had a number of

opinions from consulting physicians and psychologists. The record does not support the argument that the ALJ improperly accorded substantial weight to Dr. Carver. The record clearly supports that the ALJ did not give controlling weight to Dr. Carver. Dr. Carver was not a treating source. The ALJ specifically referenced Dr. Carver's opinion that Plaintiff had no limitation in adapting or managing herself; she was limited in public contact but not in other social situations; and she could perform simple and detailed activities but not complex work activities (Tr. 27).

The record fully and substantially supports the finding of the ALJ. The ALJ weighed and discussed various medical opinions. Further, the ALJ properly resolved conflicts between and among various treating and examining physicians.

As to Plaintiff's asserted mental limitations, the ALJ engaged in a discussion of those aspects regarding matters, facts, and opinions and treatment that impacted Plaintiff and the decision. In doing so the ALJ acted properly as is clear from a review of the record as whole, which demonstrates the ALJ weighed those opinions which were supported by the record as a whole.

The record plainly demonstrates that evidentiary weight was assigned to Alison Burner, M.A., who performed a psychological consultative examination of Plaintiff on January 5, 2015 (Tr. 234-36). The observations and assessment of Ms. Burner relating to Plaintiff's concentration and attention being below average with

hyperactivity (Tr. 235) ; that Plaintiff should be able to engage in simple, repetitive employment (Tr. 236); that Plaintiff would best be suited for non-stressful work situations (Tr. 236) allowed for the ALJ to note limitations consistent with the Burner examination.

The record demonstrates the ALJ gave great weight to Burner's opinion. The record shows that her findings were consistent with the examination. As Defendant correctly noted ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.") *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).  There is substantial evidence in the record that the ALJ appropriately weighed Ms. Burner's opinion.

The state agency psychologist, Alan Aram, Ph.D., opined Plaintiff had mild restriction in activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and one to two episodes of decompensation (Tr. 75). Aram concluded Plaintiff retained the ability to understand and remember moderately complex instructions, maintain concentration, persistence, and pace through moderately complex tasks, interact with co-workers and the general public, and adjust to simple workplace environments (Tr. 78). The ALJ merely accorded some weight to Dr. Aram's opinion since the record provided support to moderate limitations in concentration, persistence, and pace (Tr. 28). *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4)

("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"). On the issue of social functioning, the record did not show that Plaintiff demonstrated any episodes of decompensation in any extended duration (Tr. 28). As a consequence, the ALJ appropriately concluded Plaintiff had slightly greater limitations in this area.

On August 3, 2016 Gregory Goldman, Ph. D performed a psychological consultative examination and noted that Plaintiff had fair to poor reporting and that she was mildly evasive as well as impatient.  Goldman also noted during the administration of an intelligence test, that Plaintiff was impatient and aggravated. Although her IQ result was 57, he estimated that such low range was an underestimate of her actual cognitive functioning. Dr. Goldman concluded that Plaintiff was moderately to severely impaired in daily activities and severely impaired in social functioning and concentration, persistence, and pace (Tr. 405). He gave a diagnosis of mild to moderate intellectual disability, paranoid personality disorder, and other personality disorder (Tr. 406).

Review of the record indicates the ALJ fully considered the opinion of the state agency examining physician such as Dr. Graham. Ph.D., who performed a Medical Source Statement of Ability to Do Work-Related Activities (Tr. 407-09). The opinions from the Medical Source Statement were inconsistent  with the record and therefore  the ALJ acted properly in according the opinions little

weight, *See, Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017), relating to the opinion of extreme limitations.

The record is replete with an abundance of evidence supportive of the ALJ finding. As noted by defendant, on December 8, 2016, Ph.D. Edward Jasinski in response to interrogatory questions concluded Plaintiff suffered from possible anxiety, depression, intellectual disability, and symptom exaggeration/malingering (Tr. 423). He also observed that a majority of records reviewed by him showed Plaintiff's denial of mental health problems. (Tr. 424). The ALJ gave Plaintiff the benefit of the doubt in finding she had greater restrictions in the four domains of psychological functioning (Tr. 28), even though great weight was given to the Jasinski opinion.

The ALJ gave substantial weight to the opinion of psychologist Joseph Carver based upon Carver's response to interrogatories relating to Carver's review of the records. Carver reviewed the records from Dr. Gonzalez, Ms. Burner, Dr. Goldman, and Dr. Jasinski. Dr. Carver concluded Plaintiff had mild limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace (Tr. 27, 446); had no limitation in adapting or managing herself (Tr. 27, 446); was limited in public contact, but not in other social situations (Tr. 27, 446); could perform simple and detailed

activities, but not complex work activities (Tr. 27, 446). There is substantial evidence in the record to support the findings by the ALJ.

The ALJ considered the record as a whole, properly weighed all of the medical opinions, and found Plaintiff had limitations consistent with the record as a whole.

## B. Did Substantial Evidence Support the Finding that Plaintiff Could Perform Work Available in Significant Numbers in The National Economy

The testimony of the vocational expert is substantial evidence to support the ALJ's decision that Plaintiff could perform other work. *See, Courtney v. Berryhill*, 894 F.3d 1000, 1004 (8th Cir. 2018) (quoting *Moore v. Astrue*, 623 F,3d 599, 604 (8th Cir. 2010)) ("We have consistently held that if 'substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.'"). Here, the vocational expert responded to a proper hypothetical posed by the ALJ relating to Plaintiff's condition and functional limitations, concluding Plaintiff could perform work such as a dishwasher and cleaner (Tr. 60).

The record demonstrates that the ALJ put forth a proper hypothetical with all necessary factors, including the impairments, for the vocational expert to consider. The vocational expert's testimony that Plaintiff could perform work existing in significant numbers, is substantial evidence in support of the ALJ's determination.

*See Martise*, 641 F.3d at 927; *Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010). The conclusions of the ALJ must remain untouched as they are supported by substantial evidence. *See Milam*, 794 F.3d at 983

## Conclusion

The ALJ decision is supported by substantial evidence on the record as a whole. The ALJ's decision will not be reversed for the reasons set forth in this Opinion, Memorandum and Order. The decision of the ALJ denying Plaintiff's claims for benefits is affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment in accordance with this Opinion, Memorandum and Order is entered this same date

Dated this 18th day of June, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE